# Exhibit A

with you. I need to collect my thoughts.

(Recess taken at 3:35 p.m.)

(Proceedings resumed at 4:24 p.m.)

THE COURT: All right. I think we're all back. It's been a lengthy case and a lot of documents, but I think I can summarize the Court's thoughts on this. We're here today on confirmation. The Chapter 13 trustee and Ms. Burton and Ms. Thomas, the creditors, all object to confirmation. The objecting creditors and the Chapter 13 trustee are also requesting that the case be converted to Chapter 7. While the objecting parties had the initial burden to produce evidence in support of their objections, the debtor has the ultimate burden to show that the requirements of 1325 have been met. For the following reasons, which represent the Court's findings of fact and conclusions of law, the Court finds now that the debtor has not met his burden, and that confirmation must be denied.

The following issues have been raised: whether he filed -- whether the debtor filed his petition in good faith under 1325(a)(7); whether the debtor filed his plan in good faith, 1325(a)(3); and three, whether the plan proposes to pay creditors less than they would receive under a Chapter 7 liquidation, 1325(a)(4); and four, whether the plan proposes to pay all disposable income during the life of the plan, 1325(b)(1)(B). Excuse me.

Initially, the Court wants to clarify that in ruling

on confirmation, we are here on the plan actually filed by the debtor. Today, for the first time, the debtor offered additional equity, but this case has been pending almost eight months, and the contested nature of this confirmation has been known all during that time. Nor is the Court taking into consideration amounts to be paid though any unfiled Chapter 11 plans. Those are not before the Court at this time. The really -- the truly decisive issue in this case is whether the debtor filed his petition in good faith, and or plan in good faith. And in determining good faith, the Court must look at the totality of the circumstances, and I point the parties to In re Caldwell (6th Cir. 1990), and also Laguna Associates (6th Cir. 1994). While the Sixth Circuit has listed many factors to consider, no list is exhaustive. Based on the following facts of this case, the Court finds that neither the debtor's petition, nor his plan, were filed in good faith.

Initially, it is impossible to determine whether the debtor's statements and schedules are accurate. The proof has shown that the debtor has failed to disclose, and has undervalued assets. For example, the debtor listed $11,000 in a Robinhood account that was purchased in the debtor's name. Yet he failed to include an additional $19,000 in cash being held in the Robinhood brokerage account as of the date of filing. The debtor only values his real property at $104,000 based on tax records alone. This amount does not include the

128 to 150 trees that are on the property, some of which he stated initially were marketable. Perhaps not all, but some were marketable. And these trees were only disclosed at the 2004 examination. The debtor also undervalued his hundred percent ownership and interest in LG Ornamentals, LLC and Livingscapes, LLC. In the petition, the debtor valued both businesses, which are both in Chapter 11, at zero. In LG Ornamentals, the corporate debtor listed approximately 2,500 in assets, and no debt. Additionally, at the LG Ornamentals meetings of creditor - meeting of creditors, the debtor's testimony indicated that the company owned approximately $7,500 in inventory, which had not been listed.

In his testimony today, the debtor testified that 120 to 150 trees belonged to him simply because they were on his property. In Living Landscapes, LLC, the operating reports show that in four months it grossed one million, and accumulated approximately $6,500 in cash. The debtor also failed to disclose hundreds of trees and shrubs located on a friend's property in Watertown, Tennessee. The debtor valued these assets today at zero because he said the trees are too -- the trees and shrubs are too large for him to remove. Even if the debtor correctly assessed the value to be zero, he had a duty to fully disclose all assets. And based on the testimony of Ms. Burton, the debtor spent a significant amount of time and resources to cultivate trees and shrubs on that property

when she worked there in 2019, indicating that a value of zero is likely not true.

The debtor's disclosure of income, both pre- and post-petition income, has not been complete or truthful. The debtor's original statement of current monthly income and Chapter 13 calculation of disposable income, both signed under penalty of perjury, indicated a monthly income of $5,000. Yet the debtor filed his amendment state - amended statement of current monthly income on March 9th, less than a week before this hearing, claiming that his average monthly income during the six months prior to bankruptcy was only $3,940, amended from $5,000. This change takes the debtor from above median to below median, and certainly doesn't account for the $72,556.14 in draws from Livingscapes, LLC.

The door -- debtor's sworn interrogatory responses from his pending child support litigation in Davidson County, wherein he stated that his salary for the last three years has been $80,000 a year, while he received more than that in draws because he did not file his W2 payroll form until June, 2020, right before he filed his Chapter 13 petition. That W2 shows $80,000, but it doesn't account for the last three years before that, which were more than $80,000 a year. The quarterly wage report for Livingscapes, LLC, employee wages shows the year to date wages paid to the debtor to be $10,769.22, as of August the 3rd, 2020. This document also lists the debtor's salary to

be $80,000, which is paid weekly.

Is this -- as if this wasn't confusing enough, the debtor admits he took draws from Livingscapes, LLC business operations account whenever he needed to pay personal expenses or to buy stock in his personal account. These have not been included in his statement of currently monthly income. And based on back statements, these draws were significant. Livingscapes, LLC business operations commercial checking statements show that the debtor took substantial owner draws for personal expenses out of Livingscapes, LLC's operating account during the full six month prior to filing for bankruptcy, including for Robinhood investments, $38,145.50, Venmo payments, $26,460, E*TRADE payments, $5,000, and PayPal payments, $2,950.64, for a total of $72,556.14 in undisclosed personal expenditures and draws from Livingscapes, LLC. None of this was listed as income or other benefits, including health insurance, and cell phone uses listed.

In addition, the debtor provided a 2020 business expenses report for Livingscapes, LLC which identified line item Amex business charges, totaling $58,854.56 on two credit cards, one personal and one business. Despite the light on -- lie -- line -- I can't even say it -- line item charges of $58,854.56, Livingscapes, LLC paid $160,713.44 on the Amex cards during the first seven months on 2020. So that's over a hundred thousand in Amex payments made from Livingscapes, LLC's

operation account were not itemized, leading to the logical conclusion that these payments were undisclosed as prepetition income.

The debtors only switched to being a salaried income making $80,000 a year with child support litigation pending. And just before the filing for -- just before filing for bankruptcy protection. In addition to the income the debtor has not disclosed, the proof shows a likelihood that the debtor will have increased income. The debtor is the hundred percent owner of two businesses, which based on their operating reports, are continuing to make money.

Originally the debtor proposed a five-year plan. However, in the amended 22(c) form filed the week before the hearing, the debtor changed his income to below the median family income, meaning that he would only have to commit to a period of three years, rather than five. In light of the undisclosed income, a three-year plan is not reasonable. The accuracy of the debtor's debts and expenses, and the percentage the debtor proposes to pay unsecured creditors also supports a finding of bad faith. On Schedule F, the debtor listed only $18,416.13 in non-priority unsecured claims. The objecting creditors' claims are listed as unknown, even though demand letters were sent shortly before the debtor filed for bankruptcy. Without these claims, albeit contingent on unliquidated being included, the debtor only disclosed .5

percent of total outstanding, unsecured claims against him. However, an additional $45,592 in unsecured claims have been filed, none of which were disclosed on the debtor's schedules

Another example of the inaccuracies in the debtor's petition is the listing of monthly expense for health insurance in the amount of $324, even though it is paid by Livingscapes. It also appears that the debtor has not disclosed all of his debts, since a significant number of unlisted claims have now been filed. The objecting creditors' claims totaling 3,000 -- $3,500,000 are 99.5 percent of debtor's total claims, are based on intentional tort allegations. In a Chapter 7, it is highly likely that these claims would be not -- non-dischargeable. Instead, under Chapter 13, the debtor is only paying one percent of those claims. There may even be a question as to whether the debtor would be able to discharge any of his debts under 727 - under Section 727, based on his failure to provide accurate information regarding his income and expenses, and his co-mingling of assets and at best bad bookkeeping.

The debtor filed a Chapter 7 in the Western District of Tennessee in 2005. While a single prior case more than eight years ago is not a significant factor, the fact that the debtor lied about it on his meeting of creditors questionnaire indicating that he had never filed for bankruptcy protection before is significant along with all the other errors. The debtor's testimony that he didn't un -- not understand the

question is simply not credible.

Post-petition, the debtor has purchased approximately $12,000 in stocks without the authority of the Court. It also appears that the debtor has continued to make charges on his Amex accounts without authority. The debtor's motivation is clear. He only filed this Chapter 13 to avoid the objecting creditors' tort claims. And as for his sincerity, the debtor has misrepresented his assets, his debts, his income, his expenses, and his prior bankruptcy filing. And his testimony did nothing to explain the inconsistencies, or convince the Court of his -- of his sincerity or honesty. The Court simply finds the debtor not credible. The debtor's filing is not in harmony with the spirit of the bankruptcy code. Bankruptcy is supposed to give honest debtors a fresh start. Here the debtor assumed he could avail himself of bankruptcy, provide a limited and inaccurate view of his assets and income, and then walk away with minimal liability for his actions against the objecting creditors.

Given the 13 trustee's responsibility for investigating the debtor, the debtor's replete amendments, including inadequate bookkeeping and commingling of funds, present a serious hardship to the Chapter 13 trustee's ability to do her job and to state whether 1325 has been complied with. As stated earlier, the Court finds the debtor's testimony not credible. Many of his answers were evasive and full of

excuses. Based on the proof presented, the argument of counsel, and the debtor's lack of credibility, the Court finds that neither the bankruptcy petition nor the plan was filed in good faith. Although lack of good faith is determinative, two other issues have been raised.

Regarding liquidation analysis and disposable income, the debtor's financial information has been inconsistent and incomplete. As such, the debtor has not met his burden, making it impossible for the Court and the Chapter 13 trustee to make these determinations, and further supports a finding of bad faith. When a petition is found to be filed in bad faith, dismissal or conversion is required under 1307(c). The Court is persuaded that conversion is in the best interest of the creditors. As stated, the debtor's financial information has been inconsistent. Accounts have been commingled, as admitted by the debtor's counsel. His financial information has not only been inconsistent, but totally unclear. Substantial income and assets only came to light through the objecting creditors' discovery. Even the debtor admitted he was a poor record keeper, further supporting the need for a Chapter 7 trustee. And the debtor testified today as to significant equity and assets that could benefit all the creditors. Accordingly, confirmation is denied, and the case is converted to Chapter 7. Mr. Murphy, Ms. Schweitzer, will you prepare an order incorporating the Court's findings?

MS. SCHWEITZER: Yes, Your Honor, the Chapter 13 trustee would be happy to submit an order -- two separate orders, if that pleases the Court, one denying confirmation and one converting the case.

THE COURT: All right. Have Mr. Murphy sign off on those, too.

MS. SCHWEITZER: I will, Your Honor.

THE COURT: Right. Without anything further, we'll be adjourned.

UNIDENTIFIED: Thank you, Your Honor.

(Proceedings concluded at 4:43 p.m.)

* * * * *